IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00761-NRN

S.A.S.,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[1]

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff S.A.S.[2] was not disabled for purposes

of the Social Security Act. AR[3] 12–31. Plaintiff has asked this Court to review that

decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have

agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C.

§ 636(c). Dkt. #10.

---

[1] Martin O'Malley became the Commissioner of Social Security ("Commissioner") on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[3] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##9, and 9-1 through 9-17.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

**Background**

At the second step of the Commissioner's five-step sequence for making determinations,[4] the ALJ found that Plaintiff had the severe impairments of obesity, narcolepsy/hypersomnia, chronic fatigue syndrome, postural orthostatic tachycardia syndrome (POTS), post-concussive syndrome and mild neurocognitive disorder status post mild traumatic brain injury ("TBI") stemming from a October 2018 motor vehicle accident, major depressive disorder, generalized anxiety disorder, attention deficit-hyperactivity disorder ("ADHD"), and posttraumatic stress disorder ("PTSD"). AR 18. The ALJ deemed several additional impairments to be non-severe, including cholelithiasis, eosinophilic esophagitis, asthma, headaches/migraines, and sensorineural hearing loss. AR 18. The ALJ further determined that Plaintiff does not have a medically determinable impairment of sleep apnea. AR 19.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations, specifically listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 12.15

---

[4] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

(trauma- and stressor-related disorders). AR 19–20. Because she concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours and sit for more than six hours in an eight-hour workday with normal breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never use moving, hazardous machinery; have no exposure to unprotected heights; understand, remember, and carry out simple instructions that can be learned in up to and including 30 days of on-the-job training; occasionally interact with the public, supervisors, and coworkers; and adapt to occasional changes in the workplace.

AR 21.[5]

The ALJ found that Plaintiff was unable to perform her past relevant work of accounting technician, administrative assistant, contract technician, and legal assistant. AR 29–30. Considering Plaintiff's age, education, work experience, and RFC, and in light of the responses to interrogatories submitted to a vocational expert ("VE"), the ALJ determined that there were other jobs that exist in significant numbers in the national economy that she could perform, such as small product assembler, laundry worker, and electronics worker. AR 30–31. Accordingly, Plaintiff was deemed not to have been

---

[5] "Light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR 404.1567(b).

under a disability from November 26, 2018, through December 7, 2022, the date of the decision. AR 31.

**Analysis**

Plaintiff argues that the ALJ incorrectly determined that she was not disabled on four grounds. First, she claims that the ALJ erred when she improperly assessed the opinions of the treating sources and failed to support her findings with substantial evidence. Second, Plaintiff contends that the ALJ failed to support her RFC with substantial evidence when she failed to properly consider Plaintiff's fatigue. Third, she argues that the ALJ erred at step two of the sequential evaluation when she failed to consider Plaintiff's headaches/migraines and sensorineural hearing loss as severe impairments. Finally, Plaintiff argues that the ALJ erred at steps four and five when she arbitrarily requested and failed to explain why she relied upon interrogatories submitted to a second VE.

**I.    The ALJ's Assessment of Medical Source Opinions**

In assessing a claimant's RFC, the ALJ must address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). Under the regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability examines how closely connected a medical opinion is to the objective medical evidence." *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain her approach with respect to these first two factors when considering a medical opinion, but she is not required to expound on the remaining three unless she finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

Plaintiff challenges the ALJ's assessment of the medical opinions of several physicians. The Court will discuss each in turn.

### a.  Dr. Kimberly Garrison

The ALJ found the August 2022 opinion of Dr. Garrison, Plaintiff's treating psychologist who saw Plaintiff biweekly for eight months, unpersuasive. Dr. Garrison stated that Plaintiff was seriously limited or unable to meet competitive standards with respect to most mental work-related activities, would be off task for 60 percent of the workday, and would be absent from work two to three days per week. AR 28, 1002–05. The ALJ discounted this opinion:

> This opinion is substantially unpersuasive because it is not supported by
> Dr. Garrison's own treatment notes, which document mostly the claimant's

discussions of her financial difficulties and concern about the possibility of having to move in with her parents, her continued frustration with her mom, and her relationship with a new boyfriend, no significant objective abnormalities other than some intermittent tearfulness when discussing her split from her husband, and her complaints of being unable to get a job because it would affect her eligibility for disability benefits. In addition, the opinion is markedly inconsistent with the other medical evidence of record documenting substantial improvement of the claimant's cognitive and psychological symptoms and deficits by the fall of 2019, within 12 months of the alleged onset of disability; exams consistently demonstrating normal mental status other than rare findings of depressed or anxious mood and affect; and her reports of substantially intact daily and social activities and abilities.

AR 28–29.

Plaintiff argues that the ALJ's assessment is "incorrect as Dr. Garrison supported her assessment with a treatment note from February 3, 2022, wherein Plaintiff was still receiving counseling for her major depressive disorder recurrent moderate and generalized anxiety disorder." Dkt. #13 at 8. The Court is not sure what this is supposed to prove. All of Dr. Garrison's treatment notes from January through August 2022 indicate that Plaintiff was being treated for these diagnoses, and the ALJ found that Plaintiff had these severe impairments. The ALJ concluded, however, that Dr. Garrison's opinion that Plaintiff's mental conditions were disabling was not supported by her own treatment records nor consistent with other evidence in the record. Plaintiff does not challenge the ALJ's determination regarding consistency, so the Court need not discuss it. As to the ALJ's supportability evaluation, the Court agrees with the Commissioner that the ALJ's determination that Plaintiff's therapy sessions were mainly concerned with financial problems and personal relationship issues, and that Dr. Garrison did not document any significant objective abnormalities, is supported by the record. *See generally* AR 1006–38. Thus, the Court cannot find fault with the ALJ's assessment of Dr. Garrison's opinion.

**b. Dr. Laura McCarthy**

The ALJ also rejected as unpersuasive a Mental Health Provider Report completed by treating psychologist Dr. McCarthy in July 2019. According to the ALJ, Dr. McCarthy opined that Plaintiff

> had difficulty managing/switching between multiple tasks, would have difficulty with customer service/interpersonal interactions if overwhelmed and emotionally labile, and had moderate impairment of her social functioning and adaptation to stress, marked impairment of her activities of daily living, and extreme impairment of her concentration, but also indicating that she was looking for lower-stress work, would be able to return to work on December 31, 2019, and had been improving with treatment.

AR 28. The ALJ labeled this opinion internally inconsistent and inconsistent with evidence showing that Plaintiff's cognitive and psychological symptoms and deficits had substantially improved by the fall of 2019, and noted that Dr. McCarthy acknowledged that other treating providers would be better able to assess Plaintiff's functioning. *Id.*

Plaintiff argues that the ALJ ignored evidence that Plaintiff would need time off during flares and for doctor's appointments. However, the same notes Plaintiff relies on show that Dr. McCarthy's restrictions were temporary, and she anticipated they would end by the beginning of 2020. AR 933. The ALJ appropriately noted the temporary nature of the restrictions when she issued her decision in December 2022, years after the opinion was offered.

Plaintiff also argues that Dr. McCarthy's opinion was not internally inconsistent because her treatment notes demonstrate that Plaintiff was anxious, sad, and depressed well after 2019. But again, the ALJ found that Plaintiff's severe impairments included major depressive disorder and generalized anxiety disorder, and she considered them when formulating the RFC. The record also shows that the ALJ considered Dr. McCarthy treatment notes, including the post-2019 ones cited by

8

Plaintiff. *See* AR 24, 26. Plaintiff is essentially asking the Court to reweigh evidence and find that she had greater functional limitations. The Court is not permitted to do so.

### c. Dr. J. Michael Kerrigan

Plaintiff next challenges the ALJ's assessment of the March 2019 neuropsychological evaluation of examining neuropsychologist Dr. Kerrigan. The ALJ found Dr. Kerrigan's opinion that Plaintiff "would likely benefit from the breakdown and 'chunking' of information, repetition of information such as directions, and extra time to process new information and learn new skills and needs an accommodation of up to 1.5 times extra time for graduate school tests and time-limited writing assignments," only "somewhat persuasive." AR 29. The ALJ reasoned that Dr. Kerrigan's evaluation necessarily did not include the subsequent medical evidence documenting Plaintiff's continued cognitive improvement over the next eight months, and his opinion did not address most basic mental work-related activities. *Id.* However, the ALJ still concluded that Dr. Kerrigan's limitations were compatible with the RFC limiting the Plaintiff to work with simple instructions. *Id.* Plaintiff only states that "this was an incorrect conclusion which was contrary to the treatment notes in this matter establishing that the ALJ's conclusion was not supported by substantial evidence." Dkt. #13 at 11. Plaintiff does not cite any specific supporting treatment notes or argue what additional limitations should have been included in the RFC based on Dr. Kerrigan's opinion. The Court must reject Plaintiff's argument and conclusory and undeveloped. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (stating that "perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review").

**d.  Dr. Alicia Gauthier**

Finally, the ALJ found unpersuasive the opinion, based on the July 2021

consultative psychological exam, of examining psychologist Dr. Gauthier. The ALJ

characterized Dr. Gauthier's findings as follows:

> [Plaintiff] would likely have moderate limitations of her ability to understand, remember, and carry out short, simple instructions and to engage appropriately with others and a moderate to marked limitation of her ability to understand, remember, and carry out complex tasks and could manage benefits successfully, though her limitations would increase when she had to sustain attention or focus for long periods, when she was fatigued, when she had to plan or organize, when she was very anxious or depressed, or when PTSD was triggered, all "primarily due to [her] reported challenges" with executive functioning, organization, planning, concentration, and focus, "despite otherwise average cognition and memory on testing."

AR 27.

The ALJ rejected this opinion because it was not "supported by Dr. Gauthier's

own, generally normal exam findings and test results indicating average cognition and

memory, which support finding no significant limitation with respect to understanding,

remembering, or carrying out simple instructions." *Id.* The ALJ also found that the

opinion was based substantially on the Plaintiff's own subjective reports and was

inconsistent with other medical evidence in the record documenting the Plaintiff's

positive response to multiple treatment modalities, the substantial improvement of her

cognitive and psychological symptoms and deficits by the fall of 2019, and Plaintiff's

reports of daily activities. *Id.* at 27–28.

Plaintiff argues that the record shows that her condition did not substantially

improve by the fall of 2019. She cites records indicating that she was experiencing

symptoms including cognitive difficulties, headaches, lightheadedness, and fatigue in

the fall of 2019 and through 2020. However, the ALJ discussed these records in some

detail and explained why she believed they were inconsistent with the alleged severity of Plaintiff's symptoms and limitations. *See* AR 23–25. Plaintiff disagrees with the ALJ's conclusion, but the ALJ, not the Court, is empowered to weigh the evidence and resolve evidentiary conflicts. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007) (noting that "the ALJ is entitled to resolve any conflicts in the record").

The Court finds that the ALJ's evaluation of the medical evidence was appropriate because she adequately discussed the evidence she rejected or chose not to rely on in addition to the evidence supporting her decision, as required by the regulations. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

## II.   Headaches/Migraines and Sensorineural Hearing Loss

Plaintiff next contends that the ALJ erred at step two when she failed to consider Plaintiff's headaches/migraines and sensorineural hearing loss as severe impairments. This argument is unpersuasive.

At step two, an ALJ determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and

speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28, 1985 WL 56856, at *3. A claimant must provide objective evidence in the form of signs or laboratory findings "'sufficient to suggest a reasonable possibility that a severe impairment exists.'" *Bryant v. Barnhart*, 2002 WL 1272243, at * (10th Cir. 2001) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Here, the ALJ found at step two that Plaintiff's headaches/migraines and sensorineural hearing loss were non-severe impairments. AR 18. She noted that although Plaintiff was experiencing migraines in 2019, the subsequent medical records only show sporadic complaints of headaches and that she rarely needed migraine medication, with her headaches resolving with Tylenol within 30 minutes. *Id.* Similarly, while a May 2019 audiology evaluation revealed bilateral sensorineural hearing loss, Plaintiff retained a normal ability to communicate, and the only other mention of hearing loss is a July 2021 consultative exam where Plaintiff reported having sensorineural hearing loss but stated she could hear a normal conversation and demonstrated "excellent" hearing for normal conversation.

The Court finds no reversible error in the ALJ's determination that these impairments did not impose more than a minimal effect on Plaintiff's ability to perform basic work activities, or did not do so for the required duration of at least 12 continuous months. *Id.* Plaintiff argues that because her medical records noted she had migraine headaches, the ALJ should have considered it a severe impairment and then evaluated whether it is medically equivalent to listing 11.02, the most analogous listing. *See* SSR

19-4p, 2019 WL 4169635, at *7 (2019). While her burden at step two is a de minimis showing of impairment, Plaintiff must nevertheless demonstrate "more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). That is all Plaintiff did here, and the ALJ adequately explained, referring to the medical evidence, why Plaintiff's headaches/migraines and sensorineural hearing loss were non-severe impairments.

Even if the Court were to agree with Plaintiff that she made a threshold showing that her headaches and hearing loss were severe impairments, such error does not necessarily require reversal. It is settled law in the Tenth Circuit that "[o]nce the ALJ finds that the claimant has *any* severe impairment, [she] has satisfied the analysis for purposes of step two. [Her] failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (unpublished) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007)). Here, the ALJ did find that Plaintiff had severe impairments, and proceeded on to steps three through five. Therefore, any step two error the ALJ may have committed, by itself, is not reversible. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Nevertheless, Plaintiff claims that the ALJ failed to consider symptoms related to her headaches, dizziness, and hearing loss when formulating the RFC. This is belied by

the ALJ's explicit references to Plaintiff's complaints of headaches, dizziness, and lightheadedness. *See* AR 21. The ALJ also noted that Plaintiff's July 2019 audiology workup had been unremarkable. AR 12, 374. Moreover, the ALJ supported her RFC with the opinion of Dr. Stephen Creer, whose report discusses Plaintiff's sensorineural hearing deficit but states that her hearing for normal conversation is excellent. AR 29, 333. The ALJ also accommodated Plaintiff's complaints of fatigue and "rare lightheadedness" by restricting her exposure to hazards and unprotected heights. AR 27. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d 1007, 1009–10. Instead, the ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003). The Court finds that the ALJ's decision here meets that standard regarding the combined effect of all of Plaintiff's medically determinable impairments, including her non-severe impairments of migraines and hearing loss.

Furthermore, Plaintiff does not argue or show that any functional limitations caused by her migraines and hearing loss were more significant than the limitations found by the ALJ. This renders any error at step four harmless. *See Kathy L. v. Saul*, No. 2:19-cv-00527-JCB, 2020 WL 6135790, at *4 (D. Utah Oct. 19, 2020) (finding the ALJ's failure to evaluate functional limitations to the plaintiff's hearing loss to be harmless error because "Plaintiff bears the burden of demonstrating functional limitations and the need for a more restrictive RFC" but "points to no evidence in the record to suggest that the hearing loss caused functional limitations greater than those considered by the ALJ").

Finally, the Court notes that the ALJ stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe," as well as "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" when assessing Plaintiff's RFC. AR 18, 21. While perhaps not sufficient in every instance, in cases such as this, where the ALJ thoroughly discusses the medical evidence and there is no indication that she did not take the medically determinable impairments into account, the Tenth Circuit advises "to take the ALJ at her word." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (alteration omitted).

## III.   Fatigue

Plaintiff also contends that the ALJ did not consider her fatigue in formulating the RFC, notwithstanding that chronic fatigue syndrome was found to be a severe impairment. It is apparent from her decision that the ALJ discussed Plaintiff's reports of extreme fatigue and gave reasons why she discounted its allegedly disabling effect:

> Over the next couple of years, the claimant continued to make variable complaints of fatigue, stress, and rare lightheadedness, but she reported taking ballet classes several times a week, interrupted only by her brief period of recover from gallbladder surgery in January 2020; she said that she wanted to get pregnant in two to four years; she described engaging in activities like housework, swimming, camping, taking a trip to Reno, a dance performance, being more active in general, spending time with friends and family, helping a former coworker find a hotel room and then move into a women's shelter, and working on an idea for business creating plus-size ballet fashions.

AR 24.

Nevertheless, Plaintiff claims that the ALJ's focus on her ballet lessons is inconsistent with her testimony that she had only attended five classes in six months. AR 46–47. Plaintiff calls this a mischaracterization of the record. However, the record

does contain many references to Plaintiff attending ballet/dance classes throughout the period of disability, including rehearsing for a solo dance performance in March 2020, AR 996, and, as stated by the ALJ, taking multiple ("6.5") ballet classes a week in August 2019. AR 409. In other words, this is not a mischaracterization of the record, it is an evidentiary conflict that the ALJ is entitled to resolve and that the Court will not disturb. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)). Moreover, Plaintiff does not challenge any of the other grounds the ALJ gave for disregarding the claims of disabling fatigue.

The ALJ's evaluation of Plaintiff's fatigue is entirely adequate and does not warrant reversal.

## IV.    The ALJ's Reliance on Interrogatories Submitted to a Second VE

Plaintiff objects that the ALJ sent interrogatories to a second VE after the July 21, 2022 hearing at which a VE had already testified, and relied on the second VE's response in her decision. First, Plaintiff claims that this prejudiced her because she did not have an opportunity to question the VE. Second, she argues that the RFC limitation to simple instruction that can be learned in up to 30 days of on-the-job training conflicts with the General Education Development ("GED") Reasoning 2 Level requirement for the occupations identified by the VE.

Plaintiff's argument is unconvincing. The record indicates that the ALJ informed Plaintiff's counsel via letter dated October 21, 2022 that she had obtained the second VE's interrogatory responses. AR 322–33. Plaintiff was given the opportunity to submit written comments concerning the evidence, a written statement as to the facts and law that Plaintiff believed applied to the case in light of that evidence, any additional records Plaintiff wished the ALJ to consider, and written questions for the VE. *Id.* at 322. Plaintiff was also given leave to request a supplemental hearing, which the ALJ would grant unless she issued a fully favorable decision. *Id.* Plaintiff was informed that she had ten days to submit a response or the new evidence would be entered into the record. *Id.* at 323. Plaintiff chose not to respond to the VE's testimony. Accordingly, she has waived her right to challenge this evidence. *See Gay v. Sullivan,* 986 F.2d 1336, 1340 n.3 (10th Cir. 1993) ("We are not persuaded by plaintiff's contention that counsel could not adequately cross-examine the vocational expert because her (published) data source was available only by subscription. Counsel could have probed the witness about the source's reliability and acceptance in the profession, but he did not do so, and now our assessment of such matters is effectively foreclosed.").

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 25th day of March, 2024.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge